UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUSTIN C. AMENDOLA, *and*
ESTATE OF JOHN V. AMENDOLA *by*
*Justin C. Amendola, Administrator*,

                            *Plaintiffs*,

    v.

NADIA F. CAVALLERO, ROBERT N.
AMENDOLA, *and* ANNA VECCHIO,

                            *Defendants*.

No. 23-CV-10607 (KMK)

OPINION & ORDER

Appearances:

Dara Leslie Rosenbaum, Esq.
Gary M. Krim, Esq.
Rosenbaum & Taylor, P.C.
White Plains, NY
*Counsel for Plaintiffs*

Rocco F. D'Agostino, Esq.
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Justin C. Amendola ("Justin") and the Estate of John V. Amendola, by Justin C. Amendola as Administrator (together, "Plaintiffs"), bring this Action against Nadia F. Cavallero, Robert N. Amendola, and Anna Vecchio (collectively, "Defendants"), alleging breach of constructive trust and seeking the conveyance of 25% of a property in question. (*See generally* Second Amended Complaint ("SAC") (Dkt. No. 15).) Before the Court is Defendants' Motion to Dismiss. For the reasons set forth below, the Motion is granted.

I. Background

A. Factual Background

The following facts are drawn from the Second Amended Complaint and are assumed to be true for the purpose of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

In June 1985, Vincent A. Amendola ("Vincent") and Josephine Amendola ("Josephine") became owners of condominium unit 353 at 117 DeHaven Drive, Yonkers, New York (the "Condo"). (SAC ¶ 11.) In June 2005, Vincent and Josephine conveyed the Condo to their children, John V. Amendola ("John"), Robert N. Amendola, Nadia F. Cavellero, and Anna Vecchio. (*Id.* ¶ 12.) The conveyance was made by deed and the children were tenants-in-common. (*Id.*) John moved to New York in 2019. (*See* Decl. of Lisa Griffo (Dkt. No. 24-10) ¶ 8; Aff. of Robert N. Amendola (Dkt. No. 21-2) ¶ 10.)

In June 2021, John allegedly told his sister Nadia F. Cavellero that his 25% interest in the Condo should be put in the names of his son, Justin, and minor child ("CAA"). (SAC ¶ 21.)[1] John was reportedly concerned that if he defaulted on his student loans, his interest in the Condo would be encumbered. (*Id.*) On or about June 29, 2021, John and Defendants executed a deed transferring John's interest to Defendants only, "to be held by [Defendants] in trust until [CAA] reached the age of majority[,] at which time [D]efendants would, unconditionally, convey the

---

[1] While the initial Complaint included CAA, the SAC dropped CAA as a plaintiff. (*Compare* SAC *with* Compl. (Dkt. No. 1); *see also* Dkt. (indicating that CAA was terminated as of the filing of the SAC).)

[Condo] to [CAA and Justin]." (*Id.* ¶ 42–43.) John died intestate on November 28, 2021. (*Id.* ¶ 44.) On February 7, 2022, Justin was appointed the administrator of John's estate. (*Id.* ¶ 2.)

On September 21, 2023, Justin requested that Defendants convey 25% of the Condo interest to Justin, in the understanding that he would convey 12.5% to CAA upon CAA's reaching majority age. (*Id.* ¶ 51.) Defendants refused to do so, arguing that it would violate the constructive trust. (*Id.* ¶¶ 51, 54.) Justin resides in Connecticut, and Defendants all reside in New York. (*Id.* ¶¶ 2, 4–6.)

On April 23, 2024, Defendants' counsel emailed the Yonkers Registrar of Vital Statistics with a request to amend John's death certificate and included supporting documentation. (*See* Dkt. No. 42-1 at 4–5.) After some back and forth, on July 31, 2024, the official notified Defendants that the change had been made to the death certificate. (*See id.* at 49.) Defendants' counsel received the updated death certificate on August 6, 2024. (*See id.* at 70–71, 73–74.)

On August 12, 2024, Defendants petitioned the Connecticut Court of Probate to vacate its February 2022 decree appointing Justin as administrator of John's estate. (*See generally* Dkt. No. 39-3.) On October 29, 2024, a probate court judge denied Defendants' petition as untimely. (*See* Dkt. No. 44-1.)

B. Procedural Background

On December 6, 2023, Plaintiffs initiated this Action. (*See* Dkt.) Plaintiffs filed the Second Amended Complaint on February 12, 2024. (*See* SAC.) On March 4, 2024, Defendants filed a pre-motion letter for a Motion to Dismiss. (*See* Dkt. No. 16.) On April 2, 2024, the Court set a briefing schedule and ordered Plaintiffs turn over to Defendants any materials they intended to rely on to establish jurisdiction. (*See* Dkt. No. 20.) Plaintiffs submitted those documents to Defendants on June 2, 2024, via email. (*See* Dkt. No. 30.) On July 2, 2024, Defendants filed the

3

instant Motion. (*See* Not. of Mot. (Dkt. No. 21).) On August 2, 2024, Plaintiffs responded. (*See* Dkt. No. 24.)

Defendants moved on August 6, 2024, for leave to submit the updated death certificate of John alongside their Reply. (Dkt. No. 28.) On August 7, 2014, the Court granted the motion. (*See* Dkt. No. 29.) On August 12, 2024, Plaintiffs belatedly opposed Defendants' request to file the updated death certificate, (*see* Dkt. No. 30), and Defendants replied, (*see* Dkt. No. 31). Defendants filed their Reply and the updated death certificate on August 16, 2024, (*see* Dkt. No. 32 ("Defs' Reply")).

On August 19, 2024, the Court declined to reconsider its prior Order allowing Defendants to file the updated death certificate and ordered Plaintiffs to submit any evidence in support of their allegation that the change made to the death certificate was done "solely . . . to avoid the jurisdiction of this Court." (*See* Dkt. No. 33 (quoting Dkt. No. 30).) On August 26, 2024, Plaintiffs requested that the Court "so order" a subpoena to the City of Yonkers to produce all documents related to the updated death certificate. (*See* Dkt. No. 34.) The Court ordered that Defendants submit to Plaintiffs by September 6, 2024, all materials related to the change in the death certificate, (*see* Dkt. No. 36), and so ordered the requested subpoena, (*see* Dkt. No. 38).

On September 2, 2024, Defendants sent to Plaintiffs via email 11 exhibits comprising 74 pages related to the change in the death certificate. (*See* Dkt. No. 40.) On September 23, 2024, Plaintiffs submitted a letter detailing the evidence related to the change and attached six pages of materials taken from the 74 pages provided by Defendants. (*See* Dkt. No. 39.) On September 24, 2024, Defendants filed a letter arguing that Plaintiffs cherry-picked materials from the 11 exhibits they had earlier provided. (*See* Dkt. No. 40.) That day, with the Court's leave, Defendants filed all 11 exhibits on the docket. (*See* Dkt. No. 42-1.)

4

On October 16, 2024, the Court held a hearing on John's domicile.  (*See* Dkt. No. 43.) On October 31, 2024, Plaintiffs filed a letter motion for leave to file an order from Connecticut probate court in support of its Opposition to Defendants' Motion.  (*See* Dkt. No. 44.)

## II.  Discussion

A.  Standard of Review

    1.  Subject Matter Jurisdiction

A federal district court may exercise subject matter jurisdiction over a cause of action only if there exists either:  (1) "federal question" jurisdiction, which requires a claim "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331; or (2) "diversity" jurisdiction, which requires diversity of citizenship between the plaintiffs and all defendants and the amount in controversy exceeds "the sum or value of $75,000, exclusive of interest and costs," 28 U.S.C. § 1332(a).  "These jurisdictional grants . . . [e]ach serve[ ] a distinct purpose:  Federal-question jurisdiction affords parties a federal forum in which to vindicate federal rights, whereas diversity jurisdiction provides a neutral forum for parties from different States."  *Home Depot U. S. A., Inc. v. Jackson*, 587 U.S. 435, 437–38 (2019), *reh'g denied*, 140 S. Ct. 17 (Aug. 5, 2019) (quotation marks omitted) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U. S. 546, 552 (2005)).

"[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte.  If subject matter jurisdiction is lacking, the action must be dismissed."  *Biener v. Credit Control Servs., Inc.*, No. 21-CV-2809, 2023 WL 2504733, at *3 (S.D.N.Y. Mar. 14, 2023) (alteration in original) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000)); *see also Wells Fargo Bank v. 5615 Northern LLC*, No. 20-CV-2048, 2022 WL 15523689, at *3 (S.D.N.Y. Oct. 27, 2022) (same).  "A federal

court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (citation omitted)).

The Second Circuit has explained that a challenge to subject matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden," *id*. (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)), and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue," *id*. (alterations adopted) (quoting *Amidax Trading Grp.*, 671 F.3d at 145). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id*. at 57. Where a Rule 12(b)(1) motion is fact-based and the defendant proffers evidence outside the pleadings, the plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial. *See Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017). "If the extrinsic evidence presented by the defendant is material and controverted, the . . . [C]ourt will need to make findings of fact in aid of its decision as to

6

standing." *Carter*, 822 F.3d at 57. "Indeed, courts 'must' consult factual submissions 'if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction.'" *De Medicis v. Ally Bank*, No. 21-CV-6799, 2024 WL 1257022, at *3 (S.D.N.Y. Mar. 25, 2024) (quoting *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 n.6 (2d Cir. 2001)).[2]

2. Domicile

For diversity jurisdiction to exist, the cause of action must be between: (1) "citizens of different States;" (2) "citizens of a State and citizens or subjects of a foreign state;" (3) "citizens of different States and in which citizens or subjects of a foreign state are additional parties;" or (4) "a foreign state . . . as plaintiff and citizens of a State or of different States." 28 U.S.C. § 1332(a). "[C]itizenship is determined by domicile." *Hammoud v. Société Générale de Banque au Liban*, No. 20-CV-106, 2021 WL 1226440, at *3 (S.D.N.Y. Mar. 31, 2021). The Parties must be completely diverse—i.e., "all plaintiffs are citizens of different states from all defendants." *Tao v. Elite Cold Storage, LLC*, No. 23-CV-6599, 2023 WL 7738490, at *2 (S.D.N.Y. Nov. 15,

---

[2] The Court must determine which materials it may properly consider in evaluating Defendants' Motion. These materials include: (1) the updated death certificate, (Defs' Reply, Ex. J); (2) the Connecticut probate court order, (Dkt. No. 44, Ex. 1 ("Probate Order")); (3) affidavits submitted by the Parties, including that of Plaintiffs (Decl. of Justin C. Amendola (Dkt. No. 24-5); Decl. of Lisa Griffo (Dkt. No. 24-10); Decl. of Holly A. Heslin (Dkt. No. 24-15)) and of Defendants (Aff. of Robert N. Amendola (Dkt. No. 21-2); Aff. of Robin Costello (Dkt. No. 21-3); Aff. of Nadia F. Cavallero (Dkt. No. 32-1)); and (4) exhibits attached to letters from the Parties, (*see* Ltr. from Gary M. Krim dated 9/23/2024, Exs. 1–4 (Dkt. Nos. 39-1 to -4); Ltr. Resp. from Rocco F. D'Agostino dated 9/24/2024, Ex. 1 (Dkt. No. 42-1); Ltr. from Gary M. Krim dated 10/31/2024, Ex. 1 (Dkt. No. 44-1)).

Defendants' Motion arises under Rule 12(b)(1), which means the Court "may refer to evidence outside the pleadings" when deciding whether to dismiss for lack of subject matter jurisdiction. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also Michael J. Redenburg, Esq. PC v. Midvale Indem. Co.*, 515 F. Supp. 3d 95, 102 (S.D.N.Y. 2021) (same). The Court finds that it is appropriate to consider the above referenced materials, but only to the extent they discuss facts as they existed "at the time the action [was] commence[d]." *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC)*, 528 U.S. 167, 191 (2000).

2023) (quoting *Cable First Constr. Inc. v. Lepetiuk Eng'g Corp.*, No. 20-CV-5894, 2021 WL 276707, at *4 (S.D.N.Y. Jan. 27, 2021)).

Domicile is established by "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019) (quoting *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)); *see also D'Aguilar v. US Bank Tr. NA, LSF9 Master Participation Tr.*, No. 24-CV-4498, 2024 WL 3850349, at *4 (S.D.N.Y. Aug. 6, 2024) ("In general, domicile has two components: (1) physical presence in a state, and (2) the intent to make the state a home." (quoting *LoCurto v. LoCurto*, No. 07-CV-8238, 2008 WL 4410091, at *3 (S.D.N.Y. Sept. 25, 2008))). "[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2).

"In probing a party's intent to change domicile, the court examines the totality of the evidence for 'objective indicia' of intent." *Lee v. Charles*, No. 12-CV-7374, 2013 WL 5878183, at *2 (S.D.N.Y. Nov. 1, 2013). These indicia can include "where the person resides, where his family resides, 'where he keeps his personal belongings, works, exercises his political rights, maintains religious or social affiliations, pays taxes, holds a driver's license, and maintains bank accounts.'" *Id.* (quoting *Bhatti v. Pettigrew*, No. 11-CV-1044, 2012 WL 1107650, at *3 (S.D.N.Y. Apr. 3, 2012)); *see also Levy v. Suissa*, No. 16-CV-2532, 2021 WL 2402240, at *3 (E.D.N.Y. Mar. 19, 2021) (listing similar factors).

"The party charging that a domicile has been changed has the burden of proof on the issue." *Hamilton v. Accu-Tek*, 13 F. Supp. 2d 366, 369 (E.D.N.Y. 1998) (citing *Gutierrez v. Fox*, 141 F. 3d 425, 428 (2d Cir. 1998)); *Pizarro v. Langer Transp. Corp.*, No. 21-CV-5439, 2021 WL 5326433, at *3 (S.D.N.Y. Nov. 16, 2021) (same). They must show the "intent to give up the old

and take up the new domicile . . . by clear and convincing evidence." *Golub v. Berdon LLP*, No. 19-CV-10309, 2023 WL 1993323, at *4 (S.D.N.Y. Feb. 14, 2023) (quoting *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)). "Declarations of intent by the party are given heavy, but not conclusive, weight." *Hamilton*, 13 F. Supp. 2d at 370.

### 3. Amount in Controversy

A court lacks subject matter jurisdiction where the amount in controversy does not or cannot exceed $75,000. *See Rzasa v. BJ's Rests., Inc.*, No. 23-CV-140, 2023 WL 3860457, at *2 (D. Conn. June 7, 2023) (remanding to state court for lack of subject matter jurisdiction because the amount in controversy could not exceed $75,000). There is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy," but defendants can overcome this presumption if it appears to be "a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 313 (S.D.N.Y. 2013) (quoting first *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003), then *Ocean Ship, Inc. v. Stiles*, 315 F.3d 111, 115 (2d Cir. 2002)).

### B. Application

Defendants argue that diversity is lacking because the John was domiciled in New York State, and not, as Plaintiffs allege, in Connecticut. (*See* Decl. of Rocco D'Agostino ("Defs' Mem.") (Dkt. No. 21-1) ¶¶ 9–33.) Defendants also argue the amount in controversy does not exceed $75,000. (*See id.* ¶¶ 34–40.)

The Court "consider[s] relevant materials beyond the pleadings" to assess jurisdiction. *Esquibel v. Colgate-Palmolive Co.*, No. 23-CV-742, 2023 WL 7412169, at *2 (S.D.N.Y. Nov. 9, 2023) (citing *Makarova*, 201 F.3d at 113). The materials submitted by Defendants "reveal the

existence of factual problems in the assertion of jurisdiction." *Lamb v. Forbes Media LLC*, No. 22-CV-6319, 2023 WL 6318033, at *6 (S.D.N.Y. Sept. 28, 2023) (internal quotation marks omitted) (quoting *Carter*, 822 F.3d at 57). Defendants' evidence is not immaterial and Plaintiffs do not rest on their pleadings; instead, they have come forward with evidence that controverts that of Defendants. *See id.*

Accordingly, the Court addresses Defendants' arguments in turn.

1. Domicile

Defendants challenge subject matter jurisdiction pursuant to Rule 12(b)(1). While usually "the plaintiff has no evidentiary burden" at this point, *Carter*, 822 F.3d at 56, Defendants have proffered evidence outside the pleadings, requiring Plaintiffs to proffer controverting evidence, *Katz*, 872 F.3d at 119.

The Parties have submitted multiple competing declarations that claim to more accurately describe John's intent to reside in either New York or Connecticut or that simply state legal conclusions as to John's domicile at the time of his death. (*See* Decl. of Justin C. Amendola (Dkt. No. 24-5) ¶ 12 ("My father's move to New York was temporary and did not change his domicile from Connecticut to New York."); Decl. of Lisa Griffo (Dkt. No. 24-10) ¶ 19 ("John told me his plan was to sell the home on Hudson Street and, after he recovered[,] . . . move to another home in Bethel, CT to be near our children."); Decl. of Holly A. Heslin (Dkt. No. 24-15) ¶ 11 ("[John] told me he planned on returning to Connecticut and live there to be near his children."); Aff. of Robert N. Amendola (Dkt. No. 21-2) ¶ 19 (John's sale of his condo in Connecticut "was a clear expression of his intention to permanently exit . . . Connecticut."); Aff. of Robin Costello (Dkt. No. 21-3) ¶ 10 ("John had no intention to return to live in Connecticut ever again."); Aff. of Nadia F. Cavallero (Dkt. No. 32-1) ¶ 15 ("John's behavior undeniably

proves that John Amendola intended to cut all ties with the State of Connecticut.").) Courts "should not rely on self-serving declarations in evaluating where a party was domiciled for purposes of diversity jurisdiction." *Shcherbakovskiy v. Seitz*, No. 03-CV-122, 2010 WL 1063566, at *3 (S.D.N.Y. Mar. 23, 2010). Attempting to glean John's intent from these declarations is "speculative at best." *Neuman v. Machne of Richmond*, No. 21-CV-6386, 2022 WL 1591056, at *4 (E.D.N.Y. May 19, 2022); *see also Agoliati v. Block 865 Lot 300 LLC*, No. 19-CV-5477, 2023 WL 8014828, at *10 (E.D.N.Y. Nov. 17, 2023) ("Although one component of domicile is the party's intent, their stated intent is not conclusive." (citing *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1227–28 (S.D.N.Y. 1991))). This is because these self-serving declarations contain "subjective statements of . . . intent" that "cannot suffice for a finding of state citizenship if such statements are belied by objective indicia of actual residence and intent." *Shcherbakovskiy*, 2010 WL 1063566, at *3 (quoting *Willis v. Westin Hotel Co.*, 651 F. Supp. 598, 601 (S.D.N.Y. 1986)); *see also Neuman*, 2022 WL 1591056, at *3 (holding that a "party's own statements concerning his intentions are of slight weight when they come into conflict with other facts that tend to disclose a contrary intent" (internal quotation marks omitted and ellipsis adopted) (quoting *Bevilaqua v. Bernstein*, 642 F. Supp. 1072, 1074 (S.D.N.Y. 1986))). Accordingly, the Court will not give significant weight to the Parties' proffered declarations in general, and specifically as they relate to intent.

As the Court declines to wade into the Parties' competing declarations, it turns next to documentary evidence. Defendants' documentary evidence relevant to John's domicile in New York consists of:

- a New York driver's license that was issued in October 2020, (Dkt. No. 21-5 at 2);

- a document that appears to be a printout from the New York Department of Motor Vehicles indicating that John registered a vehicle in February 2021, (Dkt. No. 21-6 at 2);

- a form filed by Lisa Griffo, John's ex-wife, in divorce proceedings in Connecticut Superior Court, in which she states that "John moved out of home on 5/2019 and lives in NY", (Dkt. No. 21-8 at 2);

- a November 2021 checking account statement addressed to John from a bank based in Brewster, NY, (Dkt. No. 21-9 at 2);

- the first page of a June 2021 deed for the Condo indicating John's address as the Condo, (Dkt. No. 21-10 at 2); and

- a sales contract for a Bethel, Connecticut, condo dated October 30, 2021, that lists John as the seller, (Dkt. No. 21-11 ("Sales Contract") at 2).[3]

Defendants' evidence is clearly material as it goes to whether John's estate was domiciled in New York or Connecticut. "Because Defendant[s'] evidence reveals factual problems with Plaintiffs' assertion of subject matter jurisdiction, Plaintiffs cannot rely solely upon their contrary allegations in their complaint to establish standing and they 'need to come forward with evidence of their own.'" *Lamb*, 2023 WL 6318033, at *8 (quoting *Carter*, 822 F.3d at 57). Plaintiffs proffer documentary evidence consisting of:

- joint tax returns for John and his ex-wife Lisa Griffo for 2019 and 2020 (Dkt. No. 24-12 ("Tax Returns"));

---

[3] Defendants also point to an email between John and a representative of a senior living complex as supporting John's intent to remain in New York. (*See* Dkt. No. 21-7.) The Court agrees with Plaintiffs that this email chain does not clearly indicate that John was looking to move into the senior living complex himself—the emails are dated December 28, 2020, and Defendants offer no further support that John was seeking to move into the facility. For that reason, the Court declines to credit this document.

12

- a document that appears to be a printout from the "Connecticut License Information Driver License System" indicating that John had a Connecticut driver's license first issued in 2004 and expiring in 2023, (Dkt. No. 24-13); and

- a document that appears to be a printout from the Connecticut Voter Registration System indicating that John was registered to vote in Connecticut, last voted in 2016, and that his "[l]ast [a]ctive [d]ate" was in September 2021, (Dkt. No. 24-14).[4]

Based on its review of the competing evidence, the Court finds that John was domiciled in New York at the time of his death and of this Action's filing. Plaintiffs are correct that "[t]he mere fact that [an individual] lived . . . at his parents' home while receiving medical treatment does not, in itself, suffice to establish an intention to remain there." (Pls' Opp. to Mot. ("Pls' Opp.") (Dkt. No. 24-16) 7 (quoting *Bevilaqua*, 642 F. Supp. at 1074).) But the Court's determination does not rest solely on John's residence at the Condo. Rather, the totality of circumstances indicates that John moved from Connecticut to New York in 2019, divorced Lisa Griffo in 2020, and subsequently resided in New York, held a New York driver's license, and had an account at a bank in New York until his death. John was also in the process of selling his house in Connecticut at the time of his death.

---

[4] Plaintiffs also submit a Connecticut probate court decision denying Defendants' petition to vacate the court's earlier decree appointing Justin as administrator of John's estate. (*See* Probate Order.) The Court declines to afford the probate court order significant weight when determining John's domicile. The probate court issued its order in October 2024, nearly one year after Plaintiffs filed their initial Complaint. This is the kind of post-commencement event that courts decline to consider one way or another when evaluating a plaintiff's standing. *See Madanat v. First Data Corp.*, 626 F. App'x 349, 351 (2d Cir. 2015) (summary order) (courts determine standing "as of the commencement of suit" (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992))); *Reed v. Luxury Vacation Home LLC*, 632 F. Supp. 3d 489, 502 (S.D.N.Y. 2022) (same). The Court also notes that the October 2024 order was not on the merits, further supporting the Court's decision to disregard the order.

Plaintiffs' evidence does not outweigh that of Defendants. The tax returns were filed after John moved to New York and list the filers' address as the Bethel, Connecticut, condo that John was in the process of selling at the time of his death. (*See* Tax Returns 1; Sales Contract 2.) It is unclear from the face of the tax returns how much involvement John had in their filing, and the Court considers them only moderately persuasive of Connecticut domicile. The driver's license and voter registration printouts, however, are not persuasive. John's Connecticut license is trumped by his more recent New York license.[5] And John's Connecticut voter registration is simply too stale to indicate much. (*See* Dkt. No. 24-14 (showing that John last voted in Connecticut in 2016).) *See also Apace Commc'ns, Ltd. v. Burke*, No. 07-CV-6151, 2009 WL 1748711, at *4 (W.D.N.Y. June 19, 2009) (noting that "a person's voting registration or behavior may not be especially probative of his domicile" (citation omitted)); *Boston Safe Deposit & Tr. Co. v. Morse*, 779 F. Supp. 347, 349 (S.D.N.Y. 1991) (in determining domicile, noting that voter registration is given little weight as evidence of domicile absent "an existing pattern of voting practices" (citing *Everett v. Brief*, No. 82-CV-3153, 1985 WL 3563, at *3 (S.D.N.Y. Nov. 1, 1985))).

Throughout the course of this Action, the Parties have spilled much ink on the issue of John's death certificate. John's original death certificate listed his residence as the Bethel, Connecticut, condo that he was in the process of selling at the time of his death. (*See* Dkt. No. 24-7 (original death certificate); Sales Contract 2.) Defendants later contacted the Yonkers

---

[5] 49 C.F.R. § 383.21 provides that "[n]o person who operates a commercial motor vehicle shall at any time have more than one driver's license." New York law provides that an applicant for a New York state driver's license may not receive a license if "[t]he applicant is the holder of a license to drive issued by another . . . state and currently in force unless the applicant surrenders such license." N.Y. Vehicle & Traffic L. § 516(1) & art. V(3).

Registrar of Vital Statistics and applied for and obtained an updated death certificate that listed John's residence as the Condo. (*See generally* Dkt. No. 42-1 (containing 11 exhibits that detail the communications and process by which Defendants obtained the updated death certificate for John).) The Court notes that, to the extent that it considers the original and updated death certificates, it places no weight on the fact that the certificate was updated to a New York address. This is in keeping with the principle that standing is to be evaluated at the time a plaintiff initiates an action. *See Reed*, 632 F. Supp. 3d at 502. In other words, while the Court's finding of John's domicile comports with the updated death certificate, the Court's finding would be the same if the death certificate had never been updated.

As John was domiciled in New York at the time of his death, the "legal representative of [his] estate . . . shall be deemed to be a citizen only of [New York]." 28 U.S.C. § 1332(c)(2). This means that there is not complete diversity between the Parties—Plaintiffs are citizens of Connecticut (Justin) and New York (Justin as administrator of John's estate) and Defendants are citizens of New York. While this is sufficient to dismiss the Second Amended Complaint, *see Tao*, 2023 WL 7738490, at *2, the Court will address the Parties' arguments regarding the amount in controversy.

    2. Amount in Controversy

Defendants argue that the amount in controversy is approximately $56,592.55 because that is one-quarter of the Condo's market value of $226,369, as indicated by a 2023 tax statement for the Condo. (*See* Defs' Mem. ¶ 36; *see also id.*, Ex. I (Dkt. No. 21-12) (2023 Condo tax statement).) Plaintiffs assert that Defendants' reliance on the 2023 tax statement is misplaced because the statement does not reflect the Condo's actual market value. (*See* Pls' Opp. 3; Decl. of Gary M. Krim ("Krim Decl.") (Dkt. No 24) ¶ 15.) Plaintiffs compare the market value and

15

sale price of comparable condo units and argue that the tax assessment market value of comparable units is usually between 35% and 48% lower than the final sales price. (*See* Krim Decl. ¶¶ 16–18; *see also* Pls' Opp., Ex. 3 (Dkt. No. 24-3) (listing sales of comparable units); *id.*, Ex. 4 (Dkt. No. 24-4) (listing tax statements for comparable units).) Plaintiffs also submit a declaration from Paige Castiello, a real estate agent licensed in New York, who opines that she would have listed the Condo for $385,000 and expected it to sell at that price. (*See* Decl. of Paige Castiello (Dkt. No 27) ¶¶ 1, 5.) Castiello was unable to access the unit and based her valuation on the recorded sales of three other nearby units. (*Id.* ¶¶ 5, 6.) Defendants respond that tax statements and sales records of comparable units does not suffice to demonstrate that the amount in controversy exceeds $75,000 and note that Plaintiffs could, but did not, have the Condo appraised. (Defs' Reply ¶¶ 39–42.)

It is not a legal certainty that Plaintiffs' claim is less than $75,000. This is a high bar that Defendants have failed to clear, as their briefing does not demonstrate that "[t]he legal impossibility of recovery [is] so certain as virtually to negative [Plaintiffs'] good faith in asserting the claim." *Scherer*, 347 F.3d at 397 (quoting *Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Tr. Co. of Chicago*, 93 F.3d 1064, 1070–71 (2d Cir.1996)). Defendants' calculations of the Condo's value are a far cry from those instances in which courts find to a legal certainty that the amount in controversy does not exceed $75,000. *See, e.g.*, *Howard v. Anthem, Inc.*, 638 F. Supp. 3d 133, 140–41 (D. Conn. 2022) (finding the standard met where plaintiff stipulated that the recovery would not exceed $75,000); *Tapinekis v. Pace Univ.*, No. 20-CV-3210, 2022 WL 1084750, at *1–2 (S.D.N.Y. Apr. 11, 2022) (finding the standard met where defendant demonstrated that plaintiff's max recovery could not, as a matter of law, meet the pleading threshold); *Pena v. Gen. Motors Fin. Co. Inc.*, No. 20-CV-9294, 2022 WL 889434, at *3

(S.D.N.Y. Mar. 25, 2022) (finding the standard met where plaintiffs did not present "arguments or evidence showing that Defendants are incorrect in their calculations").

### III.  Conclusion

For the reasons set forth above, the Second Amended Complaint is dismissed for lack of subject matter jurisdiction.  The dismissal is without prejudice.  *See Spira v. Trans Union, LLC*, No. 21-CV-2367, 2022 WL 2819469, at *6 (S.D.N.Y. July 19, 2022).  To the extent that Plaintiffs have a good faith basis for filing a further amended complaint that complies with the discussion set forth in this Opinion, they must do so within 30 days of this Opinion.

The Clerk of the Court is respectfully directed to terminate the pending Motions at Dkt. No. 21, 32, and 44.

SO ORDERED.

Dated:   January 13, 2025
         White Plains, New York

                                                    KENNETH M. KARAS
                                                    United States District Judge