UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUSTIN C. AMENDOLA, *and* CAA, *a minor child, by Lisa Griffo, Parent*,

                           *Plaintiffs*,

      v.

NADIA F. CAVALLERO, ROBERT N. AMENDOLA, *and* ANNA VECCHIO,

                           *Defendants*.

No. 23-CV-10607 (KMK)

OPINION & ORDER

---

Appearances:

Dara Leslie Rosenbaum, Esq.
Gary M. Krim, Esq.
Rosenbaum & Taylor, P.C.
White Plains, NY
*Counsel for Plaintiffs*

Rocco F. D'Agostino, Esq.
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

    Justin C. Amendola ("Justin") and CAA, a minor child represented by parent Lisa Griffo,[1] (collectively "Plaintiffs" or "Children") bring this Action against Nadia F. Cavallero ("Nadia"), Robert N. Amendola ("Robert"), and Anna Vecchio ("Anna") (collectively "Defendants"), alleging breach of constructive trust and seeking to quiet title via the conveyance

---

[1] The Court notes that while the initial Complaint and First Amended Complaint included CAA as a plaintiff, the Second Amended Complaint dropped CAA as a party to this Action. (*Contrast* Compl. (Dkt. No. 1); Am. Compl. (Dkt. No. 8) *with* Second Am. Compl. (Dkt. No. 15); *see also* Dkt. (indicating CAA was terminated from the Action as of February 14, 2024).)

of 25% of the property in question.  (*See generally* Third Amended Complaint ("TAC") (Dkt.

No. 46).)  Before the Court is Defendants' Motion to Dismiss (the "Motion") pursuant to Fed. R.

Civ. P. 12(b)(1) and 12(b)(6).  For the reasons set forth below, the Motion is granted in part and

denied in part.

## I.  Background

A.  Factual Background

 The following facts are drawn from the Third Amended Complaint and are assumed to be

true for the purpose of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-*

*N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

 In June 1985, non-parties Vincent A. Amendola ("Vincent") and Josephine Amendola

("Josephine"), the parents of Defendants and John V. Amendola ("John"), became owners of

condominium unit 353 at 117 DeHaven Drive, Yonkers, New York (the "Property").

(TAC ¶ 13.)  In June 2005, Vincent and Josephine conveyed the Property to their children—

John, Robert, Nadia, and Anna.  (*Id.* ¶ 14.)  The conveyance was made by deed, and the children

owned the Property as tenants-in-common with John owning a 25% undivided interest in the

Property.  (*Id.*)

 In June 2021, John allegedly told his sister Nadia that his 25% interest in the Property

should be put in the names of his Children, Justin and CAA.  (*Id.* ¶ 23.)  John was allegedly

concerned that if he defaulted on his student loans, his interest in the Property would become

encumbered.  (*Id.*)  Nadia allegedly agreed that John's name should come off the title but advised

him to speak with an attorney because CAA would need to be represented by a custodian due to

her age.  (*Id.* ¶ 24–25.)

2

On or about June 29, 2021, John and Defendants executed a deed transferring John's interest in the Property to Defendants as tenants in common (the "Deed").  (*Id.* ¶ 45.)  Plaintiffs allege that each of the Defendants knew of John's concerns about his student loans and "promised John that [D]efendants would, unconditionally, transfer [John's interest in the Property] back to the Children . . . for no consideration" when CAA reached the age of majority.  (*Id.* ¶¶ 34, 38, 42, 44.)  On November 28, 2021, John died intestate.  (*Id.* ¶ 46.)

On or about September 21, 2023, "[D]efendants were requested to convey [John's 25% interest in the Property] to Justin, with Justin to convey a 12.5% interest in [it] to CAA upon [her] reaching majority" age, but they refused to do so.  (*Id.* ¶ 54.)  Plaintiffs allege that Defendants continue to "refuse[] to acknowledge that they hold [John's interest in the Property] in trust for [Plaintiffs] and claim it as their own[.]"  (*Id.* ¶ 53.)

B.  Procedural Background

Plaintiffs initiated this Action on December 6, 2023.  (*See* Dkt.)  On December 11, 2023, Plaintiffs filed their First Amended Complaint sua sponte.  (*See* First Am. Compl. (Dkt No. 8).)  On January 24, 2024, Defendants sought leave to file a motion to dismiss Plaintiffs' First Amended Complaint.  (*See* Defs.' Letter to Pls. (Jan. 24, 2024) (Dkt No. 13).)  In response, Defendants informed the Court that they would further amend their Complaint.  (*See* Pls.' Letter to Court (Jan. 30, 2024) (Dkt. No. 14).)  Plaintiffs filed their Second Amended Complaint on February 12, 2024.  (*See* Second Am. Compl. (Dkt. No. 15).)

On March 4, 2024, Defendants filed a pre-motion letter requesting leave to file a motion to dismiss.  (*See* Defs.' Letter to Pls. (Mar. 4, 2024) (Dkt. No. 16).)  On April 2, 2024, the Court set a briefing schedule and ordered Plaintiffs turn over to Defendants any materials they intended to rely on to establish jurisdiction.  (*See* Order (Dkt. No. 20).)  Plaintiffs submitted those

documents to Defendants via email on June 2, 2024.  (*See* Letter from Gary M. Krim, Esq. to Court (Aug. 12, 2024) 2 (Dkt. No. 30).)  On July 2, 2024, Defendants filed their Motion to Dismiss.  (*See* Notice of Mot. (Dkt. No. 21).)  On August 2, 2024, Plaintiffs responded.  (*See* Decl. in Opp. to Mot. to Dismiss (Dkt. No. 24).)  On August 6, 2024, Defendants moved for leave to submit John's updated death certificate alongside their Reply, (*see* Letter from Rocco F. D'Agostino, Esq. to Court (Aug. 6, 2024) (Dkt. No. 28)), which the Court granted on August 7, 2014, (*see* Order (Dkt. No. 29)).  On August 12, 2024, Plaintiffs belatedly opposed Defendants' request to file the updated death certificate, (*see* Letter from Gary M. Krim, Esq. to Court (Aug. 12, 2024) (Dkt. No. 30)), and Defendants replied, (*see* Letter from Rocco F. D'Agostino, Esq. to Court (Aug. 12, 2024) (Dkt. No. 31)).  Defendants filed their Reply and updated death certificate on August 16, 2024.  (*See* Defs.' Reply (Dkt. No. 32).)  On August 19, 2024, the Court declined to reconsider its prior Order allowing Defendants to file the updated death certificate and ordered Plaintiffs to submit any evidence in support of their allegation that the change made to the death certificate was done "solely . . . to avoid the jurisdiction of this Court."  (*See* Order (Dkt. No. 33) (quotation marks omitted) (quoting Letter from Gary M. Krim, Esq. to Court (Aug. 12, 2024).)  On August 26, 2024, Plaintiffs requested that the Court "so order" a subpoena to the City of Yonkers to produce all documents related to the updated death certificate.  (*See* Letter from Gary M. Krim, Esq. to Court (Aug. 16, 2024) (Dkt. No. 34).)  The Court ordered that Defendants submit to Plaintiffs by September 6, 2024, all materials related to the change in the death certificate, (*see* Order (Dkt. No. 36)), and so ordered the requested subpoena, (*see* Subpoena (Dkt. No. 38)).

On September 2, 2024, Defendants sent Plaintiffs an email containing 11 exhibits, comprising 74 pages related to the change in the death certificate.  (*See* Letter from Rocco F.

D'Agostino, Esq. to Court (Sept. 23, 2024) (Dkt. No. 40).)  On September 23, 2024, Plaintiffs submitted a letter detailing the evidence related to the change and attached six pages of materials taken from the 74 pages provided by Defendants.  (*See* Letter from Gary M. Krim, Esq. to Court (Sept. 23, 2024) (Dkt. No. 39).)  On September 24, 2024, Defendants filed a letter arguing that Plaintiffs cherry-picked materials from the 11 exhibits Defendants had earlier provided.  (*See* Letter from Rocco D'Agostino, Esq. to Court (Sept. 23, 2024) (Dkt. No. 40).)  That day, with the Court's leave, Defendants filed all 11 exhibits on the docket.  (*See* Exhibits (Dkt. No. 42-1).)

On October 16, 2024, the Court held a hearing on John's domicile.  (*See* Order (Dkt. No. 43).)  On October 31, 2024, Plaintiffs filed a letter motion for leave to file an order from Connecticut probate court in support of its Opposition to Defendants' Motion.  (*See* Letter from Gary M. Krim, Esq. to Court (Oct. 31, 2024) (Dkt. No. 44).)

On January 13, 2025, the Court determined John's Estate to be domiciled in New York and granted Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint for lack of subject matter jurisdiction.  *See Amendola v. Cavallero*, No. 23-CV-10607, 2025 WL 81383, at *8, *13 (S.D.N.Y. Jan. 13, 2025).  The dismissal was without prejudice, and the Court granted Plaintiffs 30 days to file a further amended complaint.  *Id.* at *13.

On January 30, 2025, Plaintiffs filed their Third Amended Complaint.  (*See* TAC.)  On January 31, 2025, Defendants filed a pre-motion letter requesting leave to file a motion to dismiss, (*see* Letter from Rocco F. D'Agostino, Esq. to Court (Jan. 31, 2025) (Dkt. No. 47)), and on February 7, 2025, Plaintiffs replied, (*see* Letter from Gary M. Krim, Esq. to Court (Feb. 7, 2025) (Dkt. No. 48)).  On February 27, 2025, the Court held a telephonic pre-motion conference and set a briefing schedule.  (*See* Mot. Scheduling Order (Dkt. No. 50).)  On March 31, 2025, Defendants filed the instant Motion.  (*See* Notice of Mot. (Dkt. No. 53); (Rocco D'Agostino

Decl. in Supp. of Mot. to Dismiss ("D'Agostino Decl.") (Dkt. No. 53-1); Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 53-2).)  On May 8, 2025, Plaintiffs filed their Opposition to Defendants' Motion.  (*See* Decl. of Gary M. Krim in Opp'n ("Pls.' Opp.") (Dkt. No. 54).)  On August 12, 2025, Defendants filed their Reply in Support of the Motion. (*See* Reply Aff. of Rocco F. D'Agostino, Esq. in Supp. Mot. ("D'Agostino Reply Decl.") (Dkt. No. 57).)

## II.  Discussion

### A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)).

#### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (citation and quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (quotation marks omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (alterations omitted) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id.* at 57. However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial. *See Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017). If the extrinsic evidence presented by the defendant is material and controverted, the Court must make findings of fact in aid of its decision as to standing. *See Carter*, 822 F.3d at 57.

### 2. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation

marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

 "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

8

(citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

In ruling on a motion to dismiss, the Court may also consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted). However, "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* "This generally occurs when the material considered is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (quotation marks omitted). And "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document. This principle is driven by a concern that a plaintiff may lack notice that the material will be considered to resolve factual matters." *Id.* (citations and quotation marks omitted).

B. Analysis

1. Amount in Controversy and Aggregation of Claims

Plaintiffs' sole basis for jurisdiction is diversity of citizenship. (*See* TAC ¶ 10.) Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over all "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a); *see also Perpetual*

*Sec., Inc. v. Tang,* 290 F.3d 132, 136 (2d Cir. 2002) (same).  It is well accepted that "if subject matter jurisdiction is lacking, the action must be dismissed."  *Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186, 193 (2d Cir 2003) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier,* 211 F.3d 697, 700–01 (2d Cir. 2000)).

Plaintiffs allege the Property is "presently valued between $305,000.00 and $390,000.00" so the amount in controversy, i.e., John's interest, is "at least $76,250.00, that being 25% of the low end" of the Property's estimated value.  (TAC ¶¶ 16–17.)  Defendants claim Plaintiffs have not met the amount in controversy requirement because each Plaintiff seeks an individual 12.5% interest in the Property and "[w]ell settled law clearly establishes that two[] separate [p]laintiffs are not allowed to aggregate their claims to satisfy the amount in controversy requirement." (Defs.' Mem. 7 (citing *Snyder v. Harris*, 394 U.S. 332, 336 (1969).)

The "non-aggregation" principle cited by Defendants establishes that "each of several plaintiffs asserting separate and distinct claims must satisfy the jurisdictional[]amount requirement if their claim is to survive a motion to dismiss."  *Gilman v. BHC Sec., Inc.*, 104 F.3d 1418, 1422 (2d Cir. 1997) (citation and quotation marks omitted).  However, an exception to the non-aggregation principle exists where "several plaintiffs unite to enforce a single title or right, in which they have a common undivided interest, . . . [and] their interests collectively equal the jurisdictional amount."  *Id.* (citation and quotation marks omitted); *see also Loc. 538 United Bhd. of Carpenters & Joiners v. U.S. Fid. & Guar. Co.*, 154 F.3d 52, 55 (2d Cir. 1998) ("It is well-established that the claims of several plaintiffs against a common defendant may be aggregated to reach the jurisdictional minimum when [the plaintiffs seek] to enforce a single title or right, in which they have a common and undivided interest." (quotation and citation marks omitted)); *Agoliati v. Block 865 Lot 300 LLC*, No. 19-CV-5477, 2023 WL 8014828, at *16 (E.D.N.Y. Nov.

10

17, 2023) (permitting aggregation when plaintiffs claimed to have an undivided 1/8th share as tenants-in-common in the property at issue), *report and recommendation adopted by* 2023 WL 8618234 (E.D.N.Y Dec. 13, 2023); *Radcliffe v. Wright*, No. 16-CV-9511, 2018 WL 3187338, at *3 (S.D.N.Y. June 18, 2018) ("[T]here is an established 'common fund' exception to this non-aggregation rule, which allows aggregation in 'cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest.'" (quoting *Snyder*, 394 U.S. at 335)); *Siegel v. Consol. Edison, Inc.*, 318 F. Supp. 2d 176, 180 (S.D.N.Y. 2004) ("It is true, however, that claims may be aggregated when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest." (citation and quotation marks omitted)). "[T]he 'paradigm cases' allowing aggregation of claims 'are those which involve a single indivisible res, such as an estate, a piece of property (the classic example), or an insurance policy. These are matters that cannot be adjudicated without implicating the rights of everyone involved with the res.'" *Gilman*, 104 F.3d at 1423 (quoting *Bishop v. Gen. Motors Corp.*, 925 F. Supp. 294, 298 (D.N.J. 1996)).

Plaintiffs' Action is one such paradigm case. Plaintiffs seek to be named tenants in common in the Property alongside Defendants. (TAC ¶ 1.) "The chief attribute of a tenancy in common is unity of possession by two or more owners. All co-owners, or cotenants, of a tenancy in common share a *single right* to possession of the entire interest." 7 Powell on Real Property § 50.01 (2025) (emphasis added); *see also Agoliati*, 2023 WL 8014828, at *14 n.18 (same); *Butler v. Rafferty*, 792 N.E.2d 1055, 1058 (N.Y. 2003) ("The distinguishing feature of [a tenancy[]in[]common] is the right of each cotenant to use and enjoy the entire property as would a sole owner. This undivided interest (usually called "unity of possession") is a right enjoyed by all cotenants . . . .") (citations omitted)). Here, aggregation of Plaintiffs' claims is proper

11

because they seek to share in Defendants' single right of possession of the Property as tenants in common with them. (*See* TAC ¶ 70 ("Plaintiffs seek a determination that they are tenants-in-common with [D]efendants" as owners of "a 25% undivided interest" in the Property); *id.* ¶ 63 (asking the Court to decree Defendants to be trustees of a 25% interest in the Property for the benefit of Plaintiffs which Defendants must convey to Plaintiffs "or, should CAA have attained the age of majority, to the Children as tenants[]in[]common with [D]efendants.")

Aggregation is further supported by the fact that Plaintiffs' claims cannot be adjudicated without impacting Defendants' interest in the Property since Plaintiffs seek to be made co-owners alongside Defendants. (*Id.*); *see also Agoliati*, 2023 WL 8014828, at *16 (permitting aggregation of claims when the plaintiffs sought to be named tenants in common with the defendants in the property at issue). Lastly, Plaintiffs' claims derive from the same source—their late father's interest in the Property, (TAC ¶¶ 23, 46)—so they share a "common interest [in the Property] arising under a single title or right[,]" *Gilman*, 104 F.3d at 1424, which further supports the case for aggregation of their claims. Accordingly, Plaintiffs' claims can be aggregated to meet the jurisdictional requirement.

### 2.  Constructive Trust Claim

In New York, "a constructive trust may be imposed when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest." *Sharp v. Kosmalski*, 351 N.E.2d 721, 723 (N.Y. 1976) (alteration and internal quotation marks omitted). Constructive trust is "the formula through which the conscience of equity finds expression," and thus "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Simonds v. Simonds*, 380 N.E.2d 189, 193 (N.Y.

1978) (quotation marks omitted); *see also Barker v. Gervera*, 230 N.Y.S.3d 834, 843 (App. Div. 2025) (same); *Toobian v. Golzad*, 147 N.Y.S.3d 61, 66 (App. Div. 2021) (same).  The purpose of the constructive trust doctrine "is to prevent unjust enrichment, although unjust enrichment does not necessarily implicate the performance of a wrongful act."  *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361 (2d Cir. 1999); *see also Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) ("A constructive trust is an equitable remedy and its purpose is to prevent unjust enrichment." (quoting *Henning v. Henning*, 962 N.Y.S.2d 189, 192 (App. Div. 2013)); *Heap v. CenturyLink, Inc.*, No. 18-CV-1220, 2020 WL 148901, at *19 (S.D.N.Y. Mar. 27, 2020) ("Ultimately, '[t]he purpose of [a] constructive trust is prevention of unjust enrichment.'" (quoting *In re First Cent. Fin. Corp*, 377 F.3d 209, 212 (2d Cir. 2004)).  Such "[u]njust enrichment results when a person retains a benefit which, under the circumstances of the transfer and considering the relationship of the parties, it would be inequitable to retain."  *Counihan*, 194 F.3d at 361; *see also Simonds*, 380 N.E.2d at 194 ("What is required, generally, is that a party hold property under such circumstances that in equity and good conscience he ought not to retain it." (internal quotation marks omitted)).

Four factors have been set forth for evaluating whether a constructive trust should be imposed: "(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment."  *Sharp*, 351 N.E.2d at 723.  These factors, however, are only guidelines, as the "constructive trust doctrine is not rigidly limited."  *Simonds*, 380 N.E.2d at 194; *see also Counihan*, 194 F.3d at 362 ("[W]e have observed that, although these factors provide important guideposts, the constructive trust doctrine is equitable in nature and should not be rigidly limited." (alteration and internal quotation marks omitted)); *see also Rowe v. Kingston*, 942 N.Y.S.2d 161, 163 (App. Div. 2012) ("However, as these elements serve only as a guideline,

13

a constructive trust may still be imposed even if all of the elements are not established." (internal citations omitted)).

a.  Plausibility

Defendants first claim they could not have breached the alleged constructive trust because John transferred his interest in the Property to "Defendants to hold until 'CAA attained majority [age,]'" which has not yet occurred.  (D'Agostino Decl. ¶ 26 (citing TAC ¶¶ 34, 38, 42).)  However, Defendants misconstrue the nature of Plaintiffs' claim.  While the Third Amended Complaint's first cause of action is titled "breach of constructive trust," Plaintiffs actually seek the imposition of a constructive trust on the Property so that Defendants are legally bound to convey a 25% interest in it to Plaintiffs or to the Children should CAA have reached the age of majority.  (*Contrast* TAC 5 *with id.* ¶¶ 1(a)(i)–(iv), 13 (outlining the requested relief).)

Defendants next argue Plaintiffs' constructive trust claim is defective because Plaintiffs did not have a prior interest in the Property.  (Defs.' Mem. 8–10.)  Although Defendants cite many cases in support of this position, they are distinguishable because the party seeking the imposition of a constructive trust in those cases conveyed the property to the opposing party for his or her *own* benefit, not the benefit of a third party.  *See, e.g.*, *Eickler v. Pecora*, 785 N.Y.S.2d 126 (App. Div. 2004) (affirming the imposition of a constructive trust in favor of a plaintiff who had contributed time and money to the property in reliance on the defendants' promise that he would own it); *Ladone v. Ladone*, 503 N.Y.S.2d 831 (App. Div. 1986) (affirming imposition of a constructive trust in favor of the plaintiff who relinquished her interest in the property in reliance on the defendant's promise to reconvey it to her).

Here, Plaintiffs allege that John created a constructive trust for the Children's benefit when he transferred his interest in the Property to Defendants in reliance on their promise to

convey it to the Children once CAA reached majority age.  (*See* TAC ¶ 53 ("[D]efendants . . . have refused to acknowledge that they hold [John's interest in the Property] in trust for the Children and claim it as [Defendants'] own . . . .").)  As noted by Plaintiffs, New York courts have routinely allowed beneficiaries of a constructive trust to sue for its enforcement, *see Goldsmith v. Goldsmith*, 39 N.E. 1067, 1068 (N.Y. 1895) (permitting the plaintiff, who was a third-party beneficiary of an alleged constructive trust, to bring suit for its enforcement); *Weiss v. Weiss*, 588 N.Y.S.2d 308, 309–10 (App. Div. 1992) (same); *Wnuk v. Wnuk*, 95 N.Y.S.2d 254, 255 (Sup. Ct. 1950) (same); *cf. W. Union Tel. Co. v. Shepard*, 62 N.E. 154, 181 (N.Y. 1901) ("It is well settled that when one person becomes invested with the title to real property under circumstances which, in equity, obligate him to hold the title and to exercise his ownership for the benefit of another, a trust arises in favor of the latter person . . . ."), so Plaintiffs' lack of prior interest in the Property is not fatal to their claims.  *See McGovern v. Solomon*, 466 F. Supp. 2d 554, 556–57 (S.D.N.Y. 2006) ("[I]t is implicit that the equitable doctrine of constructive trust . . . conveys standing upon those who would otherwise have inherited from the decedent.") (internal quotation marks and citations omitted); *Dobbs v. Dobbs*, No. 06-CV-6104, 2008 WL 3843528, at *10 n.2 (S.D.N.Y. Aug. 14, 2008) (same).

### b.  Sufficiency of the Pleadings

Defendants also seek to undermine the plausibility of Plaintiffs' allegations because they are based on information and belief.  (*See* Defs.' Mem. 13–15.)  According to Defendants, "Plaintiffs attempt[] to address the 'promise' requirement that must be met for the imposition of a constructive trust with . . . threadbare and naked assertion[s] . . . ."  (*Id.* at 14.)  Defendants argue that because Plaintiffs' Third Amended Complaint alleges, "upon information and belief," that Robert, Nadia, and Anna promised to transfer John's interest in the Property to Plaintiffs

when CAA attained majority age, "it can be assumed that . . . Plaintiffs lack not only direct knowledge to support the allegations, but also lack indirect evidence and/or credible information that would support" the existence of alleged promise.  (D'Agostino Decl. ¶ 44.)

*Twombly* permits a plaintiff to plead facts on information and belief "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).  Here, the facts surrounding each Defendant's alleged promise to John are exclusively within Defendants' possession and control because John is deceased.  *See Moraes v. White*, 571 F. Supp. 3d 77, 103–04 (S.D.N.Y. 2021) (finding the contents of a call between defendant and a non-party to be "peculiarly within the possession and control of the defendant and [the third-party], and will be developed in discovery."); *Nat'l Coalition on Black Civic Participation v. Wohl*, No. 20-CV-8668, 2021 WL 4254802, at *6 (S.D.N.Y. Sept. 17, 2021) (permitting plaintiffs to plead allegations regarding a conversation between defendants on information and belief because "the facts regarding the content of [defendants'] telephone discussions are uniquely within [defendants'] possession and control.")).

Defendants also argue the Third Amended Complaint fails to meet the "confidential or fiduciary relation" element of a constructive trust claim because although Plaintiffs allege all of the Parties are "related by blood[,]" the Third Amended Complaint does not include "any details or any other information describing how their respective relationships were of a 'confidential' or 'fiduciary' nature . . . ."  (Defs.' Mem. 14.)  However, "[f]amilial relationships often satisfy this element[]" of a constructive trust claim.  *Reale v. Reale*, 485 F. Supp. 2d 247, 253 (W.D.N.Y. 2007) (citation omitted); *see also Rowe*, 942 N.Y.S.2d at 163 ("As familial relatives, the parties shared a confidential relationship."); *Brand v. Brand*, 811 F.2d 74, 78 (2d Cir. 1987) (noting that

16

the New York Court of Appeals has indicated that a "familial relationship often satisfies [the] first element of constructive trust" (citation omitted)).  Accordingly, Defendants' objections to the sufficiency of Plaintiffs' constructive trust claim are without merit.

### 3.  Action to Quiet Title

Plaintiffs also bring an action to quiet title, seeking to nullify the Deed.  (*See* TAC ¶¶ 64–80).  Defendants argue Plaintiffs' action to quiet title is defective because they fail to join Josephine and John's Estate as parties in violation of New York State Real Property Actions and Proceedings Law ("RPAPL") § 1511.  (Defs.' Mem. 18–19.)  They also assert, in passing, that Plaintiffs lack standing to bring an action to quiet title because "if the [D]eed is nullified, [John's interest in the Property] will revert to a non-party (to wit:  [John's Estate]).  As such, Plaintiffs lack standing to bring relief that does not pertain to them."  (*Id.* at 19.)  Each of these arguments will be addressed in turn.

#### a.  Standing

According to Defendants, should Plaintiffs succeed in nullifying the Deed, John's interest in the Property "will revert to a non-party (to wit: [John's Estate]) . . . [and] Plaintiffs lack standing to seek relief that does not pertain to them."  (*Id.* at 19.)  This argument is unavailing because "the concept of standing focuses on the party seeking relief, rather than on the precise nature of the relief sought."  *Jenkins v. McKeithen*, 395 U.S. 411, 423 (1969) (citing *Flast v. Cohen*, 392 U.S. 83, 99–100 (1968)); *see also Eletson Holdings, Inc. v. Levona Holdings, Inc.*, 731 F.Supp.3d 531, 576 (S.D.N.Y. 2024) ("It does not follow . . . that a person who has suffered a concrete non-speculative harm is denied a federal forum simply because the relief that will redress that harm will also accrue to the benefit of a third party." (citation omitted); *Hobart Coll. v. Fitzhugh*, 27 N.Y. 130, 134–35 (1863) (recognizing the existence of actions under New York

17

law that "are for the benefit of those interested in the [decedent's] estate."); *cf., Trump v. CASA, Inc.*, 606 U.S. 831, 851–52 (2025) (recognizing that "party-specific injunctions" sometimes incidentally benefit non-parties)).

However, Plaintiffs lack standing to bring an action to quiet title because their interest in the Property is through intestacy. (*See* Pls.' Opp. 8–9 ("Plaintiffs, as John's only children, had an interest in the [Property] prior to [the execution of the Deed] . . . . Their interest was also in the form of a future interest in 25% of the [Property] as John's only heirs at law, given that he had no [w]ill." (citations omitted); TAC ¶ 23 (alleging John wished "to preserve his interest in the . . . Property for the benefit of the Children.").) "New York law is clear that in such a situation, the asserted claims belong to the [decedent's] estate, not any beneficiaries in their individual capacity." *Gass v. Mamedova-Braz*, No. 15-CV-3799, 2017 WL 3588944, at *7 (S.D.N.Y. Aug. 18, 2017) (collecting cases). As previously determined by this Court, John's Estate resides in New York, *see Amendola*, 2025 WL 81383, at *7, the same state as Defendants, so Justin, as executor of John's Estate, cannot bring an action to quiet title in federal court without destroying complete diversity of citizenship, *see* 28 U.S.C. § 1332(a) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent[.]"); *Manley v. Doby*, No. 12-CV-4835, 2012 WL 5866210, at *5 (E.D.N.Y. Nov. 19, 2012) (dismissing for lack of complete diversity because the decedent's estate and opposing party had the same domicile); *Thomas v. Wakefern Food, Corp.*, No. 12-CV-1723, 2012 WL 6212657, at *3–4 (D. Conn. Dec. 13, 2012) (same). Accordingly, Plaintiffs' action to quiet title is dismissed because the Children lack individual standing to sue and John's Estate cannot bring this claim on their behalf without divesting the Court of jurisdiction. *See MasterCard Int'l Inc. v. Visa Int'l Ass'n, Inc.*, 471 F.3d 377, 384 (2d Cir. 2006) ("[B]ecause

18

Visa's joinder would destroy diversity jurisdiction, the underlying action must be dismissed for lack of subject matter jurisdiction."); *Gass*, 2017 WL 3588944, at *7 (dismissing the individual plaintiffs from an action to quiet title because they lacked standing to sue); *Selengut ex rel. Pauline Selengut Irrevocable Tr.*, No. 19-CV-2556, 2019 WL 5212962, at *2 (E.D.N.Y. Oct. 16, 2019) ("Accordingly, [the non-party's] mandatory joinder [under RPAPL § 1511] destroys diversity and the Court must dismiss this action for lack of subject matter jurisdiction."); *Kitzen v. Hancock*, No. 17-CV-612227, 2019 WL 612227, at *7 (E.D.N.Y. Jan. 19, 2019) ) ("[W]here joinder of an indispensable party would destroy diversity jurisdiction, the claim must be dismissed." (citation omitted)), *adopted by* 2019 WL 591557 (E.D.N.Y. Feb. 13, 2019).

### b. Necessary Parties

Because Plaintiffs lack standing to bring an action to quiet title, the Court cannot reach the merits of Defendants' argument that Plaintiffs' quiet title claim must be dismissed for failure to join Josephine and/or John's Estate as necessary parties. *See In re Appointment of Indep. Couns.*, 766 F.2d 70, 75 (2d Cir. 1985) ("[W]hen a plaintiff lacks standing[,] the court must dismiss the case on that ground, and it is unnecessary to intimate a view on the merits of the claim." (citation omitted); *EMI Ent. World, Inc. v. Karen Records, Inc.*, No. 05-CV-390, 2015 WL 1623805, at *2 (S.D.N.Y. Feb. 27, 2015) ("As the Supreme Court recently recognized, a court does not have authority to reach the merits of a case where it finds that a plaintiff does not have standing." (citation omitted).

### III. Conclusion

For the reasons set forth above, Defendants' Motion is granted in part and denied in part. Accordingly, Plaintiffs' action to quiet title is dismissed for lack of subject matter jurisdiction,

19

but Plaintiffs' constructive trust claim remains active.  The Clerk of the Court is respectfully

directed to terminate the pending Motion at Dkt. No. 53.

SO ORDERED.

Dated:    March 31, 2026
          White Plains, New York

 

_____
KENNETH M. KARAS
United States District Judge

20